## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 10-11484-GAO**

_____
                                     )
**MARK SAUNDERS,**                   )
    **Plaintiff,**                )
                                     )
**v.**                               )
                                     )
**EMPIRE TODAY, LLC;**               )
**EMPIRE HOME SERVICES, LLC;**       )
**and COBRASOURCE, INC.**            )
    **Defendants.**               )
_____)

### DEFENDANTS EMPIRE TODAY, LLC'S
### AND EMPIRE HOME SERVICES, LLC'S MEMORANDUM
### <u>IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT</u>

Plaintiff, Mark Saunders, is a former employee of Defendant, Empire Today, LLC (f/k/a

Empire Home Services, LLC) (collectively, "Empire"), in Empire's Boston market.  Plaintiff

was terminated by Empire in July 2006, but Plaintiff did not file this lawsuit to complain about

his termination.  Rather, Plaintiff brought this lawsuit solely to complain about the manner in

which Empire and its co-defendant plan administrator, COBRASOURCE, Inc.

("COBRASOURCE"), allegedly handled their purported post-termination duties and obligations

to Mr. Saunders under the Consolidated Omnibus Budget Reconciliation Act, or COBRA, which,

under certain circumstances, allows former employees the opportunity to elect to continue their

health care coverage for a period of time, at their own expense.

More specifically, Plaintiff alleges that Empire (1) failed to give timely notice of

Plaintiff's termination to COBRASOURCE pursuant to 29 U.S.C. § 1166(a)(2) (<u>Count I</u>);[1] (2)

failed to provide Plaintiff with information on COBRA when he purportedly requested it

_____

[1] Plaintiff refers to each separate claim in his Complaint as a "Claim For Relief," with four "Claims for Relief" in all.  For ease of reference and consistency with federal pleading styles, this Memorandum refers to the claims as Count I, Count II, Count III, and Count IV.

pursuant to 29 U.S.C. § 1024(b)(4) (<u>Count II</u>); and (3) discriminated against him under 28 U.S.C. § 1140 (ERISA § 510) by failing to give notice to COBRASOURCE and failing to provide him with the requested COBRA information (<u>Count III</u>).

All three claims fail as a matter of law and must be dismissed. Count I is time-barred, as Plaintiff waited over four years from the accrual of his claim under § 1166(a)(2) to file his Complaint.

Count II fails for two, independent reasons. First, Plaintiff fails to allege that he made any <u>written</u> <u>request</u> for COBRA information, which is an essential element of the claim. Second, § 1024(b)(4) applies only to plan "administrators," and Plaintiff alleges that COBRASOURCE, and not Empire, was the plan "administrator."

Count III fails because Plaintiff has not alleged an essential element of an ERISA § 510 claim – namely, that Empire took an adverse employment action in order to interfere with his rights under COBRA. Plaintiff also alleges a fourth claim (<u>Count IV</u>) for attorneys' fees and costs under ERISA, but this is a request for relief, not an independent cause of action, and it should be dismissed as such.

For these reasons and the reasons explained more fully below, Empire respectfully requests that the Court dismiss the entirety of Plaintiff's Complaint with prejudice.

## <u>ARGUMENT</u>

### I.   STANDARD ON A 12(b)(6) MOTION TO DISMISS

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Dismissal for failure to state a claim is appropriate when the pleadings fail to set forth "factual allegations, either direct or inferential,

respective each material element necessary to sustain recovery under some actionable legal theory." *Berner v. Delahanty*, 129 F.3d 20, 25 (1st Cir. 1997).  "Affirmative defenses, such as the statute of limitations, may be raised in a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), provided that the facts establishing the defense [are] clear on the face of the plaintiff's pleadings." *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc*., 524 F.3d 315, 320 (1st Cir. 2008).  Where the dates included in the complaint show that the limitations period has been exceeded, dismissal is appropriate.  *Id*.

## II.   COUNT I OF PLAINTIFF'S COMPLAINT IS TIME-BARRED

In Count I, Plaintiff alleges that Empire violated the COBRA notice requirements under 29 U.S.C. § 1166(a)(2).  As explained further below, however, this claim is barred by the applicable four-year statute of limitations.

COBRA requires that employers allow former employees the opportunity to elect the continuation of their health care coverage for a period of time, at their own expense, if they are terminated.  *See* 29 U.S.C. § 1161.  When an employee is terminated, the employer is required to notify the plan administrator within 30 days of the termination.  *See* 29 U.S.C. § 1166(a)(2).  The plan administrator is then required to notify the terminated employee of his or her rights under COBRA within fourteen days of the date on which the administrator is notified of the termination by the employer.  *See* 29 U.S.C. § 1166 (a)(4) & (c).  Thus, the employee should receive notice of his COBRA rights no later than 44 days after termination.

If an employer or plan administrator fails to provide timely notice under § 1166, an employee may bring suit and seek penalties under 29 U.S.C. § 1132(c)(1).  An employee's claim under § 1132(c)(1) for a violation of § 1166 accrues on the 45th day following the employee's

termination.  *Pierce v. Visteon Corp.*, No. 1:05-cv-1325-LJM-JMS, 2007 U.S. Dist. LEXIS 75479, at *12 (S.D. Ind. Oct. 9, 2007).

Here, Saunders alleges that he was terminated by Empire on July 26, 2006.  (*See* Complaint at ¶ 14).  As a result, the last date on which Saunders could have received timely notice of his COBRA rights was 44 days later, on September 8, 2006, and Saunders' claim under § 1166 accrued on the following day (e.g., the 45th day), September 9, 2006.  *See Pierce*, 2007 U.S. Dist. LEXIS 75479, at *12.

Because § 1166 does not have an express statute of limitations, courts look to the most analogous case of action under state law and apply its limitations period.  *See, e.g., Harvey v. Mingo Logan Coal Co.*, 104 Fed.Appx. 838, 839-40 (4th Cir. 2004); *Thompson v. Continental Cas. Co.*, 602 F.Supp.3d 943, 945 (N.D. Ill. 2009).  While the First Circuit Court of Appeals has never addressed the appropriate Massachusetts statute of limitations to apply to a § 1166 claim, other federal circuit courts of appeals and district courts outside the First Circuit have consistently held that state law claims for unfair trade practices or unfair insurance practices are the most analogous to a claim under § 1166.  *See, e.g., Lopez v. Premium Auto Acceptance Corp.*, 389 F.3d 504, 510 (5th Cir. 2004) (for § 1166 claim, applying 2-year statute of limitations applicable to unfair insurance practices claim under Texas law); *Harvey v. Mingo Logan Coal Co.*, 104 Fed.Appx. 838, 839-40 (4th Cir. 2004) (for § 1166 claim, applying 1-year statute of limitations applicable to unfair trade practices claim under West Virginia law); *Thompson v. Continental Cas. Co.*, 602 F.Supp.3d 943, 945 (N.D. Ill. 2009) (for § 1166 claim, applying 2-year statute of limitations applicable to claim under Illinois insurance code); *Treanor v. Metro. Transp. Auth.*, 414 F.Supp.2d 297, 304-5 (S.D.N.Y. 2005) ("the statue of limitations for a COBRA [§ 1166] claim is best analogized to a statute claim of unfair insurance practices").

Claims under the Massachusetts unfair trade practices statute (G.L.c. 93A) and unfair insurance practices statute (G.L.c. 176D) are subject to a four-year statute of limitations, and, consistent with the above authority, that limitations period should apply to Plaintiff's § 1166 claim here. *See* G.L.c. 260, § 5A; *see also Tilton v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 07-10163-RWZ, 2008 U.S. Dist. LEXIS 22200, at *4-5 (D. Mass. Mar. 20, 2008) ("Claims under Mass. Gen. Laws. ch. 93A and related claims under ch. 176D are subject to a four-year limitations period.").

As explained above, Saunders' § 1166 claim accrued on September 9, 2006. Consequently, Saunders was required to file suit on his § 1166 claim by September 9, 2010, at the latest. Saunders did not file his Complaint in this action until September 26, 2010. As a result, his § 1166 claim is time-barred and should be dismissed accordingly. *See Thompson v. Continental Cas. Co.*, 602 F.Supp.3d 943, 945 (N.D. Ill. 2009) (granting motion to dismiss § 1166 claim as time-barred); *see also Lopez v. Premium Auto Acceptance Corp.*, 389 F.3d 504, 510 (5th Cir. 2004) (granting motion for summary judgment on § 1166 claim as time-barred); *Harvey v. Mingo Logan Coal Co.*, 104 Fed.Appx. 838, 839-40 (4th Cir. 2004) (same).[2]

## II. COUNT II OF PLAINTIFF'S COMPLAINT FAILS TO ALLEGE A CLAIM AGAINST EMPIRE

Under ERISA, plan administrators are required to respond to certain written requests for information by plan participants. 29 U.S.C. § 1024(b)(4). If the plan administrator fails or refuses to comply with such a written request within 30 days, the court may, in its discretion, penalize the administrator "in the amount of up to $100 per day from the date of such failure or refusal" and award "such other relief as it deems proper." 29 U.S.C. § 1132(c)(1)(B). To state a

---

[2] Empire understands that COBRASOURCE has asked for an extension of time until March 1, 2011 to file its responsive pleading. COBRASOURCE has not joined in this motion, and Empire has no standing to argue for dismissal of the Complaint as to COBRASOURCE. For the Court's benefit, however, Empire notes that this same statute of limitations analysis would apply to Plaintiff's § 1166 claim against COBRASOURCE, such that, if the Court were to dismiss Count I as time-barred as to Empire, it should do the same as to COBRASOURCE.

claim for damages under § 1132(c)(1)(B) based on a violation of § 1024(b)(4), a plaintiff must

allege that (1) he made a written request; (2) to an administrator of the plan; (3) for information

the administrator is required to provide under ERISA; and (4) the administrator failed to honor

the request within 30 days. *Campbell v. Prudential Ins. Co. of America*, No. 01-5229, 2003 U.S.

Dist. LEXIS 15544, at *5 (E.D. Pa. July 17, 2003)

In Count II of his Complaint, Plaintiff alleges that "Defendants" violated 29 U.S.C. §

1024(b)(4) by failing to provide him with "plan documentation when requested." (*See*

Complaint at ¶ 38).  It is unclear whether Plaintiff brings this claim against Empire,

COBRASOURCE, or both defendants.  As explained below, to the extent Plaintiff brings this

claim against Empire, it must be dismissed because (1) Plaintiff fails to allege that he made a

"written request" for information; and (2) Empire is not the plan administrator and, thus, cannot

be liable under § 1024(b)(4) or § 1132(c)(1)(B).

### A.      Plaintiff Fails To Allege That He Made A "Written Request" Under § 1024(b)(4)

Section 1024(b)(4) provides that "[t]he administrator shall, upon <u>written request</u> of any

participant or beneficiary, furnish a copy" of the requested plan documents.  29 U.S.C. § 1124(b)

(emphasis added).  Thus, to properly state a claim under § 1024(b)(4), a plaintiff must allege that

he or she made a request <u>in writing</u>.

Here, Plaintiff alleges that he "requested" information from Empire and

COBRASOURCE, but he does not that he made any such requests <u>in writing</u>, and he attaches no

such written requests as exhibits to his Complaint, apparently because none exists.  (*See*

Complaint at ¶¶ 20, 30).  Because Plaintiff fails to allege that he made a "written request" for

information, he has not stated a claim under § 1024(b)(4) against Empire, and Count II of his

Complaint should be dismissed.  *See, e.g.,  Michael v. First Commercial Bank*, 69 Fed.Appx.

801, 806 (7th Cir. 2003) (dismissing § 1024(b)(4) claim where plaintiff failed to allege having

made a "written request" for plan documents); *Middlebrooks v. St. Coletta of Greater*

*Washington, Inc.*, No. 1:10cv653 (JCC), 2010 U.S. Dist. LEXIS 92915, at *8 (E.D. Va. Sep. 7,

2010) (dismissing § 1024(b)(4) claim because "[n]owhere in her Complaint does Plaintiff allege

that she made a *written* request for the SPD") (emphasis in original); *Spinedex Physical USA,*

*Inc. v. United Healthcare of Arizona, Inc.*, 661 F.Supp.2d 1076, 1104 (D. Ariz. 2009)

(dismissing § 1024(b)(4) claim because the "Complaint describes various requests for

information, but makes no mention of any written requests"); *Bishop v. Martin Marietta Corp.*,

No. 95-5426, 1997 U.S. Dist. LEXIS 4026, at *6-7 (E.D. Pa. Mar. 28, 1997) ("Because Ms.

Bishop has not alleged that her request for the summary plan description was in writing . . . she

has failed to state a claim" under § 1024(b)(4)); *see also Caffey v. Unum Life Ins. Co.*, 302 F.2d

576, 584 (6th Cir. 2002) (granting summary judgment to defendant on plaintiff's § 1024(b)(4)

claim because plaintiff "had not shown any evidence that she made a written request to the plan

administrator"); *Colin v. Marconi Commerce Sys. Employees' Retirement Plan*, 335 F.Supp.2d

590, 611-12 (M.D.N.C. 2004) (same).[3]

> **B.      Empire Is Not The Plan "Administrator" And, Thus, Cannot Be Liable
> Under § 1024(b)(4)**

Even if Plaintiff had alleged that he made a "written request," Count II would still fail

against Empire because Empire is not the plan "administrator."  It is well established that §§

1024(b)(4) and 1132(c)(1)(B) apply only to the plan "administrator" and that, as a result, only

the plan "administrator" can be held liable for damages under § 1132(c)(1)(B) for failing to

comply with § 1024(b)(4).  *See, e.g., Mondry v. American Family Mut. Ins. Co.*, 557 F.3d 781,

793-94 (7th Cir. 2009) ("this court and others have held that liability under section 1132(c)(1) is

---

[3] Again, for the Court's benefit only, Empire notes that Plaintiff's failure to allege a "written request" is grounds for dismissal of Count II against COBRASOURCE, as well.

confined to the plan administrator and have rejected the contention that other parties . . . can be held liable for the failure to supply participants with the plan documents they seek"); *Gore v. El Paso Energy Corp. Long Term Disability Plan*, 477 F.3d 833, 842-43 (6th Cir. 2007) ("It is well established that only plan administrators are liability for statutory penalties under § 1132(c)"); *Cline v. Indus. Maintenance Eng. & Contracting Co*., 200 F.3d 1223, 1234 (9th Cir. 2000) ("only the plan 'administrator' can be held liable for failing to comply with the reporting and disclosure requirements" of § 1024(b)(4)); *Thorpe v. Retirement Plan of the Pillsbury Co*.; 80 F.3d 439, 444 (6th Cir. 1996) (claims under § 1024(b)(4) "may be brought only against designated plan administrators, rather than the plan itself or the employer").

Here, Plaintiff makes no allegation that Empire was the plan "administrator." Rather, Plaintiff correctly alleges that "COBRASOURCE was the Plan Administrator for Defendant Empire." (*See* Complaint at ¶ 28; *see also* Complaint at ¶ 29). Thus, by virtue of his own allegations, Plaintiff acknowledges that Empire was not the plan "administrator." His §1024(b)(4) claim against Empire must be dismissed accordingly. S*ee Davis v. Verizon New England Inc*., No. 04-07-P-S, 2004 U.S. Dist. LEXIS 7919, at *13-14 (D. Me. May 5, 2004) (dismissing plaintiff's § 1024(b)(4) claim against defendant Verizon where "plaintiff has made no allegation that Verizon so acted" as plan administrator); *see also Hope Network Rehab. Servs. v. State Farm Mut. Auto. Ins. Co*., No. 1:10-cv-348, 2010 U.S. Dist. LEXIS 99318, at *20-21 (W.D. Mich. Sep. 22, 2010) (dismissing § 1024(b)(4) claim brought against benefits administrator, not plan administrator); *Feinberg v. Rand McNally & Co. Supplemental Pension Plan*, No. 09 C 659, 2009 U.S. Dist. LEXIS 67348, at *7-8 (N.D. Ill. July 29, 2009) (dismissing § 1024(b)(4) claim brought against non-plan administrator).

**III.      COUNT III FAILS TO ALLEGE A CLAIM UNDER ERISA § 510**

In Count III, Plaintiff alleges that Empire discriminated against Plaintiff under ERISA §

510 by failing to provide COBRASOURCE with notice of Plaintiff's termination and failing to

provide Plaintiff with plan documents or information.  As explained further below, Plaintiff's §

510 claim fails for a simple, fundamental reason – Plaintiff has alleged no adverse employment

action, which is a requirement for any claim under § 510.

Under ERISA § 510, it is unlawful "for any person to discharge, fine, suspend, expel,

discipline or discriminate against a participant or beneficiary for exercising any right to which he

is entitled under the provisions of an employee benefit plan . . . or for the purpose of interfering

with the attainment of any right to which such participant may become entitled under the plan."

29 U.S.C. § 1140.  ERISA § 510 thus includes an anti-retaliation component and a separate anti-

interference component.

Here, Plaintiff does not allege that Empire retaliated against him for exercising rights

under ERISA, so Plaintiff's § 510 claim is purportedly one for alleged interference with his

ERISA rights.  The anti-interference prong of § 510 "was designed to protect the employment

relationship which gives rise" to an employee's benefits rights.  *Deeming v. American Standard,*

*Inc.*, 905 F.2d 1124, 1127 (7th Cir. 1990).  "This means that a fundamental prerequisite to a §

510 action is an allegation that the employer-employee relationship . . . was changed in some

discriminatory or wrongful way."  *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit*

*Pension Plan*, 24 F.3d 1491, 1503 (3d Cir. 1994); *Deeming v. American Standard, Inc.*, 905 F.2d

1124, 1127 (7th Cir. 1990).  In other words, "[t]o state a claim under § 510, plaintiffs must allege

that defendant took some type of adverse employment action to interfere with the attainment of

their benefit rights under the plan."  *Maguire v. Level Sights, Inc.*, No. 03 CV 2294, 2004 U.S.

Dist. LEXIS 13566, at *5 (S.D.N.Y. 2004); *see also Bopp v. Idaho Nat'l Lab. Employee Retirement Plan*, 709 F.Supp.2d 1024, 1035 (D. Idaho 2010) ("Plaintiffs cannot state a claim for a § 510 violation since there was no adverse employment action").

Nowhere does Plaintiff allege that Empire did anything to impact Plaintiff's employment relationship with Empire in order to interfere with Plaintiff's rights under COBRA.  Indeed, all of Plaintiff's allegations focus on alleged Empire conduct that occurred after he was terminated in July 2006.  Plaintiff alleges that Empire "discriminated" against him under § 510 by purportedly (1) failing to notify the plan administrator of Plaintiff's termination within 30 days (*see* Complaint at ¶¶ 41 and 43); (2) failing to notify Plaintiff of his COBRA rights within 44 days after termination (*see id.* at ¶ 46);[4] and (3) failing to provide Plaintiff with the name of the plan administrator upon his post-termination requests for such information (*see id.* at ¶¶ 42 and 44).  In an apparent attempt to try to shoehorn this claim into § 510, Plaintiff makes the empty and vague allegation that "Defendant egregiously created an adverse action to prevent future enjoyment of Plaintiff's benefit rights."  (*See* Complaint at § 45).  But Plaintiff fails to identify the purported "adverse action" and, indeed, there could be no such adverse action since Plaintiff was not employed with Empire when he allegedly attempted to pursue his COBRA rights.[5]

---

[4] Under 29 U.S.C. § 1166(a)(4), it was the plan administrator's duty, and not Empire's, to notify Plaintiff of his rights under COBRA within 44 days of termination, so this allegation is not properly directly against Empire. *See* 29 U.S.C. § 1166(a)(4).  Even if it were, however, it still involves only alleged post-termination conduct and, therefore, cannot be the basis for a § 510 claim.

[5] The only allegation in Plaintiff's Complaint that even addresses his employment relationship with Empire appears in Paragraph 14, where Plaintiff alleges that he was terminated by Empire on July 26, 2006.  (*See* Complaint at ¶ 14).  But Plaintiff does not allege that he was terminated in retaliation for exercising his COBRA rights (since he could not exercise his COBRA rights until after termination) or in order to interfere with him exercising his COBRA rights (since all of the Empire interference he described purportedly occurred after his termination).  Moreover, even if his July 2006 termination could form the basis of a § 510 claim, that claim would clearly be time-barred.  The First Circuit applies a three-year statute of limitations to claims under § 510, and such claims accrue on the date of the adverse employment action.  *See, e.g., Muldoon v. C.J. Muldoon & Sons*, 278 F.3d 31, 32 (1st Cir. 2002).  Plaintiff alleges that he was terminated on July 26, 2006, and he did not file suit until more than four years later, in September 2010.

Plaintiff's § 510 claim, in short, is premised on the theory that Empire engaged in conduct <u>after</u> his termination in an effort to block him from pursuing his COBRA rights.  As explained above, however, this cannot form the basis of an interference claim under § 510, and courts have long dismissed § 510 claims like Plaintiff's based entirely on alleged post-termination conduct.  In *Huntsinger v. Shaw Group, Inc*., 410 F.Supp.2d 968 (D. Ore. 2006), for example, a former employee brought a § 510 claim against a former employer that was premised on his allegation that, after he was terminated, his former employer deprived him of information necessary to convert or port his life insurance.  *Id*. at 975.  Noting that claims under § 510 "require, as a fundamental prerequisite, an allegation that the parties' employer-employee relationship was changed in some discriminatory or wrongful way," the court dismissed the §510 claim because "[a]ny alleged discrimination against Huntsinger occurred after he was terminated and did not affect his employment relationship."  *Id*.

Similarly, in *McMurtrie v. Specialty Minerals, Inc*., No. 09-cv-944, 2009 U.S. Dist. LEXIS 73856 (E.D. Pa. Aug. 13, 2009), plaintiff former employee brought a § 510 claim against a former employer, alleging that one of the employer's doctors had misrepresented to plaintiff, after his termination, that he was not eligible for long-term disability benefits.  *Id*. at *3-4, 12-13. Because this alleged misrepresentation had occurred approximately one month after Plaintiff's termination, the court held that the misrepresentation "could not have impacted the employee/employer relationship" and, as a result, plaintiff "has failed to plead discriminatory 'prohibited employer conduct' under Section 501."  *Id.* at *15; s*ee also Bennett v. Prudential Ins. Co.,* 192 Fed.Appx. 153, 157 (3d Cir. 2006) (dismissing former employee's § 510 claim based employer's offer of lump-sum payment to then-current employees, as such offer "did not change [the employer's] relationship with" the plaintiff); *Woolsey v. Marion Laboratories, Inc*., 934

11

F.2d 1452 (10th Cir. 1991) (dismissing former employee's § 510 action that was based on the

employer's denial of request for stock payment after termination); *Carmouche v. MEMC*

*Pasadena, Inc*., No. 06-2074, 2008 U.S. Dist. LEXIS 55167, at *37-38 (S.D. Tex. July 21, 2008)

(granting summary judgment on plaintiff's § 510 claim premised entirely on alleged

communications between employer and insurer regarding plaintiff's medical and work history);

*Mansfield v. Lucent Tech.*, No. 04-3589 (MLC), 2006 U.S. Dist. LEXIS 49455, at *8-9 (D.N.J.

July 20, 2006) (rejecting § 510 claim based on employer's alleged misclassification of former

employee more than 10 years after former employee's termination; "Plaintiff cannot state a claim

under Section 510 since he was not a Lucent employee . . at the time" he was misclassified);

*Shields v. Local 705*; No. 96 C 1928, 1996 U.S. Dist. LEXIS 15772, at *33-34 (N.D. Ill. Oct. 22,

1996) (dismissing § 510 claim where "Plaintiff, who is retired, has not alleged that his

employment status was changed in a wrongful or discriminatory manner, as is necessary to

sustain a section 510 claim"); *Kincaid v. Harcourt Brace Jovanovich, Inc*., 863 F.Supp. 1471,

1479 (D. Kan. 1994) (granting former employer's motion for summary judgment where § 510

claim was premised on former employer's alleged refusal to pay severance benefits after former

employee's termination).

     Plaintiff's allegations here similarly fail to state a claim under § 510.  The

"discriminatory" conduct alleged against Empire occurred entirely <u>after</u> Plaintiff was terminated

in July 2006 and had nothing whatsoever to do with Plaintiff's employment relationship with

Empire.  Plaintiff's § 510 claim should be dismissed accordingly.

## IV.    COUNT IV IS A DEMAND FOR RELIEF, NOT AN INDEPENDENT CAUSE OF ACTION

     In Count IV, Plaintiff seeks attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g)(1).

Attorneys' fees and costs can be remedies for claims brought under ERISA, but they are not

separate causes of action as Plaintiff alleges.  Indeed, the language of § 1332(g)(1) itself makes this clear when it provides that the court may allow a reasonable attorney's fee and costs to either party for "any action under this title."  29 U.S.C. § 1132(g)(1).  And Plaintiff himself seems to acknowledge as much by making the same request for attorneys' fees and costs pursuant to § 1132(g)(1) in his prayer for relief, which appears immediately after Count IV.  (*See* Complaint at ¶ 58).

Plaintiff's request for attorneys' fees and costs is not a separate cause of action and should be dismissed.  *See, e.g., South Port Marine, LLC v. Gulf Oil Ltd. P'shp*., 234 F.3d 58, 64 (1st Cir. 2000) (dismissing claim for punitive damages because they "do not constitute a separate cause of action, but instead form a remedy available for some tortious or otherwise unlawful acts"); *Brandon v. Commonwealth of Pennsylvania*, No. 95-5597, 1997 U.S. Dist. LEXIS 13837, at *9 (E.D. Pa. Sep. 8, 1997) (dismissing claim for attorneys' fees, costs, and punitive damages because "[t]hese are not properly separate causes of action, but merely demands for relief"); *see also Hughes v. American Tripoli, Inc*., No. 2:04-cv-485-FtM-29DNF, 2006 U.S. Dist. LEXIS 34469, at *6 (M.D. Fla. May 30, 2006) (striking claim that "addresses only damage, and is not a separate cause of action"); *Terra Indus., Inc. v. Commonwealth Ins. Co. of America*, 990 F.Supp. 679, 688 (N.D. Iowa 1997) ("Count IV is dismissed, to the extent that Count IV attempts to state a separate cause of action for damages.").[6]

---

[6] Moreover, even if Plaintiff's request for attorneys' fees and costs could constitute a separate cause of action, it should nevertheless be dismissed if the Court dismisses Counts I, II, and III of Plaintiff's Complaint, as Plaintiff would have no claims under ERISA that could possibly merit an award of fees and costs under § 1132(g)(1).

## <u>CONCLUSION</u>

For the foregoing reasons, Empire respectfully requests that the Court dismiss the entirety of Plaintiff's Complaint with prejudice.

## <u>CERTIFICATE OF SERVICE</u>

In accordance with Local Rule 5.2(b), I, William J. Hunt, hereby certify that this

document filed through the ECF system on February 16, 2011 will be sent electronically to the

registered participants as identified on the Notice of Electronic Filing.

Respectfully submitted,

**CLARK, HUNT, AHERN & EMBRY**

*/s/ William J. Hunt*

_____
William J. Hunt (244270)
55 Cambridge Parkway
Cambridge, MA 02142
(617) 494-1920